**D.A. and M.A., Individually and as Next Friends of A.A., A Minor, Appellants**

v.

**TEXAS HEALTH PRESBYTERIAN HOSPITAL OF DENTON, Marc Wilson, M.D., and Alliance OB/GYN Specialists, PLLC d/b/a/ OB/GYN Specialists, PLLC, Appellees**

NO. 02–16–00148–CV

Court of Appeals of Texas, Fort Worth.

DELIVERED: February 16, 2017

Kirk L. Pittard, Maria Wormington, for A., M.

Maria Wormington, Kirk L. Pittard, for A., D.

Gregory P. Blaies, for Texas Health Presbyterian Hospital Denton.

William H. Chamblee, David M. Walsh, IV, for Marc A. Wilson, M.D.

David M. Walsh, IV, William H. Chamblee, for Alliance OB/GYN Specialists, PLLC.

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

## OPINION

### BONNIE SUDDERTH, JUSTICE

#### I. Introduction

Appellants D.A. and M.A. bring this interlocutory appeal challenging the trial court's grant of summary judgment in favor of Appellees Texas Health Presbyterian Hospital of Denton (THP), Marc Wilson, M.D., and Alliance OB/GYN Specialists, PLLC d/b/a OB/GYN Specialists, PLLC. We granted permission to appeal on a single issue—whether civil practice and remedies code section 74.153 applies to medical care provided in an obstetrical unit without the patient having first been evaluated in a hospital emergency department. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.153 (West 2011). In reversing the judgment below, we hold that it does not.

#### II. Background

Appellants' child, A.A., suffered a brachial plexus injury during labor and delivery when the infant's shoulder became lodged against M.A.'s pubic symphysis bone, resulting in a condition known as "shoulder dystocia." The night before A.A. was born, M.A. checked into THP for an elective induction of labor. The next morn-ing, Wilson prescribed the administration of Pitocin to begin M.A.'s contractions, and he monitored her labor progression throughout the remainder of the day. Nothing occurred that caused Wilson to believe that either M.A. or A.A. was facing an emergency situation until later that evening when A.A.'s progress in descending from M.A.'s pelvis ceased. Although Wilson applied forceps to deliver A.A.'s head, the rest of the infant's body did not follow.

At that point Wilson recognized the shoulder dystocia and began maneuvers to release the shoulder and deliver the infant. Both sides agree that A.A.'s shoulder dystocia presented an emergent situation that placed both M.A. and A.A. at risk for injury or death if the infant could not be quickly extricated from that position. And while neither side disputes that A.A. suffered a brachial plexus injury, the parties disagree as to whether Appellees' conduct caused the injury or whether A.A.'s injury would have occurred despite the medical care provided during delivery.

Challenging the ordinary negligence claims filed against them in the medical malpractice lawsuit that ensued, Appellees sought summary judgment, arguing that since the allegations levied against them are governed by civil practice and remedies code section 74.153, Appellants must prove negligence by a willful and wanton standard. *See id.* That statute provides,

In a suit involving a health care liability claim against a physician or health care provider for injury to or death of a patient *arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite **immediately following the evaluation or treatment of a patient in a hospital emergency department***, the claimant bringing the

suit may prove that the treatment or lack of treatment by the physician or health care provider departed from the accepted standards of medical care or health care only if the claimant shows by a preponderance of the evidence that the physician or health care provider, with wilful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances.

*Id.* (emphases added).

The trial court agreed with Appellees and granted summary judgment on Appellants' claims of ordinary negligence, ruling that section 74.153 applies to medical care performed in an obstetrical unit and that Appellants must prove their claims against Appellees under a "wilful and wanton negligence" standard. Appellants filed a petition for permission to appeal this interlocutory judgment,[1] and we granted permission to appeal on the question of whether section 74.153 applies to medical care provided in an obstetrical unit without the patient's first having been evaluated in a hospital emergency department. *See* Tex. R. App. P. 28.3.

### III. Standard of Review

 We review matters of statutory interpretation de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). And while the primary objective of statutory interpretation is to "ascertain and effectuate the Legislature's intent," the supreme court instructs us that the source for legislative intent is found, whenever possible, in the plain language of the statute itself. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 572 (Tex.

2016). As the supreme court has further instructed us, when a statute's words "yield a single inescapable interpretation," our inquiry ends. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). That is, we do not resort to extrinsic aids to interpret a statute that is clear and unambiguous. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). But when a statute is ambiguous, we must resort to rules of construction or extrinsic aids. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

### IV. Is the Statute Ambiguous?

### A. Identifying the Relationship Between the Statute's Phrases

In this appeal we are asked to consider the relationship between the phrase "immediately following the evaluation or treatment of a patient in a hospital emergency department" (hereinafter "Evaluation or Treatment Phrase") and two other phrases, "in a hospital emergency department or obstetrical unit" and "in a surgical suite" that appear in section 74.153. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.153. As presented and briefed by the parties, the question before us is: To which location (or locations) does the Evaluation or Treatment Phrase apply? Surgical suites? Obstetrical units? Hospital emergency departments? Or all three?

If the Evaluation or Treatment Phrase applies only to surgical suites, as Appellees argue, then the emergency medical care provided to A.A. is subject to section 74.153 because emergency care provided in an obstetrical unit—where A.A. received emergency care—need not immediately follow evaluation or treatment in the hospi-

---

1. On April 14, 2016, the same date that the trial court signed its order granting summary judgment, the trial court also signed an order permitting an interlocutory appeal of its rul-

ing and staying all proceedings in the trial court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (West Supp. 2016); Tex. R. Civ. P. 168.

tal emergency department to trigger the statute. If, however, the phrase applies to obstetrical units, as Appellants argue, then the emergency medical care provided to A.A. does not invoke section 74.153 because it was not provided immediately following evaluation or treatment in the hospital emergency department.

## B. Grammar and Usage

When examining statutory text, the Code Construction Act mandates that we read words and phrases in context and construe them according to the rules of grammar and usage. Tex. Gov't Code Ann. § 311.011(a) (West 2013) (providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar ...."); *see Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) ("Only when those words are ambiguous do we 'resort to rules of construction or extrinsic aids.'" (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007))).

Grammar is an intrinsic aid, not an extrinsic aid. *See* Larry M. Eig, Congressional Research Service, 97–589, Statutory Interpretation: General Principles and Recent Trends 4–5, 12 (2011) (defining "language" canons of construction as "neutral, analytical guides for discerning the meaning of particular text," including the rules of grammar among the "language" canons, and stating that "the language

canons are intrinsic aids only"), https://fas.org/sgp/crs/misc/97-589.pdf. And while the supreme court directs us not to resort to the use of extrinsic aids when construing an unambiguous statute, we have been instructed that grammar *should* be used, because an interpretation that "turns grammar on its head" will not support a claim of ambiguity since it is not a reasonable interpretation. *Wellington Underwriting Agencies Ltd. v. Houston Expl. Co.*, 267 S.W.3d 277, 288 (Tex. App.–Houston [14th Dist.] 2008), *aff'd*, 352 S.W.3d 462 (Tex. 2011). Therefore, when considering whether this statute is subject to more than one reasonable interpretation, we first apply the rules of grammar to see if more than one reasonable interpretation would comport with the rules of language that govern us.[2] If the statute is ambiguous under the rules of grammar, then we turn to the extrinsic tools created to assist in construing ambiguous language. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437.

### 1. Grammatical Rules Applicable to Words and Phrases

To analyze the statute before us, we must consider the roles of the various phrases in use; specifically, participial phrases and prepositional phrases.[3] A brief primer on the pertinent parts of speech is helpful in this pursuit.

**2.** As Justice Antonin Scalia and legal writing expert Bryan Garner have more fully explained,

Although drafters, like all other writers and speakers, sometimes perpetrate linguistic blunders, they are presumed to be grammatical in their compositions. They are *not* presumed to be unlettered. Judges rightly presume, for example, that legislators understand subject-verb agreement, noun-pronoun concord, the difference between the nominative and accusative cases, and the principles of correct English word-choice.

No matter how often the accuracy, indeed the plausibility, of this presumption is cast in doubt by legislators' oral pronouncements, when it comes to what legislators enact, the presumption is unshakable.

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140 (2012) (footnote omitted).

**3.** *See generally* Webster's New World English Grammar Handbook 32, 109, 213, 369 (2d ed. 2009) [hereinafter *Webster's New World*].

Nouns are words that name persons, places, and things. *Webster's New World, supra* note 3, at 7. Verbs are words that express an act, an occurrence, or a state of being—that is, one cannot do or be anything without them. *Id.* at 45.

Grammar becomes more complex when modifiers are added. A modifier is "a word that describes or limits another word," and, depending upon what kind of word it modifies, it can be either an adjective or an adverb. *Id.* at 85. An adjective "describes or limits a noun or pronoun," placing restrictions on any noun with which it associates. *Id.* Adjectives usually answer *which, what kind,* or *how many. Id.* An adverb, on the other hand, generally modifies a verb, an adjective, or another adverb, but may also modify other words, including prepositions. *Id.* at 95. Adverbs most often describe *when, where, why,* and *how. Id.*

Phrases—groups of words—may also act as modifiers. For purposes of our analysis here, we must examine two types of phrases.

A participial phrase is a phrase that is introduced with a participle. *Id.* at 86, 213. A participle is a word that "combines characteristics of a verb with those of anz adjective" by taking the base form of a verb, such as "arise," and adding -ing to the end.[4] *Id.* at 32, 213, 368. Participial phrases function exactly as adjectives function—they describe or limit a noun or pronoun, often answering *which, what kind,* or *how many. Id.* at 86, 213.

A prepositional phrase combines a preposition and its object and may include other words that pattern with the object. *Id.* at 109, 369. Prepositions may appear as a single word—*in, to, from, with,* for example—or a collection of words—such as *by*

way of, with regard to, in comparison with,* and *in case of.* To complicate matters, certain participles—*assuming, including, regarding,* and *following,* for example—also function as prepositions. *Id.* at 112. When participles function as prepositions, they are referred to as participial prepositions. *Id.*

The prepositional phrase as a whole may function as an adjective or an adverb, depending upon how the phrase modifies a particular word. If the prepositional phrase describes or limits a noun, it serves as an adjective and is categorized as an adjectival prepositional phrase. *Id.* at 200. If, on the other hand, the prepositional phrase modifies a verb, adjective, adverb, or another prepositional phrase, it functions as an adverb and is referred to as an adverbial prepositional phrase. *Id.*

## 2. Application

The statutory language in dispute begins with the phrase "arising out of the provision of emergency medical care":

> In a suit ... **arising out of the provision of emergency medical care** in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 74.153 (emphasis added). The bold-face phrase is a participial phrase whose function is to act as an adjective and modify the noun "suit."

Five prepositional phrases then follow:

- "in a hospital emergency department or obstetrical unit";
- "in a surgical suite";

---

4. The method of creating a present participle should not be confused with gerunds, which also use the –ing ending but act as nouns, not

as modifiers. *See Webster's New World, supra* note 3, at 207–08, 214.

- "immediately following the evaluation or treatment";
- "of a patient"; and
- "in a hospital emergency department."

The first two prepositional phrases are adverbial prepositional phrases. Both modify the participial phrase "arising out of the provision of emergency medical care" and describe *where* the emergency medical care is provided.[5]

The remaining three phrases combine to form one adverbial prepositional phrase, the Evaluation or Treatment Phrase, that describes *when* the emergency medical care is provided. That is, "following" is a participial preposition, which, as discussed above, supplies information such as *"how, when, where, why, under what conditions, [or] to what extent." Webster's New World, supra* note 3, at 104, 112, 200. The word "immediately" is an adverb that modifies the word "following." The phrase "of a patient" is an adjectival prepositional phrase modifying the nouns "evaluation" and "treatment" by describing or limiting *what kind of* evaluation or treatment. The phrase "in a hospital emergency department" is an adverbial prepositional phrase modifying the prepositional phrase "immediately following the evaluation or treatment" and describing *where* the evaluation or treatment occurs.

While the first two phrases in the list above function to restrict the application of section 74.153 by location, the last three, comprising the Evaluation or Treatment Phrase, through use of the words "immediately following," function to restrict the application of section 74.153 by time and sequence. The essential question before us concerns the breadth of this time and sequence limitation. Is only one location—a surgical suite—subject to this time and sequence limitation, or does the limitation apply to emergency medical care provided in all three locations—a hospital emergency department, an obstetrical unit, and a surgical suite?

The relationships between the various phrases at issue, including the question of which phrase the Evaluation or Treatment phrase modifies, are illustrated below:[6]

5. Adverbs generally tell *"how, when, where, why, under what conditions*, and *to what extent." Webster's New World, supra* note 3, at 104.

6. This diagram does not follow the structure of a conventional sentence diagram but is included simply to provide a visual explanation of how the phrases at issue interact with one another.

As the diagram illustrates, grammatically speaking, the question is whether the Evaluation or Treatment Phrase modifies the prepositional phrase "in a surgical suite" or the participial phrase "arising out of the provision of emergency medical care." Because, as explained above, the Evaluation or Treatment Phrase is an adverbial phrase, it may modify a verb,[7] an adjective, another adverb, or, in some cases, a prepositional phrase. *Id.* at 95. The phrase "arising out of the provision of emergency medical care" is a participial phrase functioning as an adjective; the phrase "in a surgical suite" is an adverbial prepositional phrase. The rules of grammar would permit the Evaluation or Treatment Phrase to modify either.

But while both options produce a grammatically correct result, each yields a different meaning. If the Evaluation or Treatment Phrase modifies the participial phrase "arising out of the provision of emergency medical care," then the Evaluation or Treatment Phrase applies to emer-gency medical care administered in all three locations. Thus, whether the emergency care is administered in a hospital emergency department, an obstetrical unit, or a surgical suite, that care must occur immediately following evaluation or treatment in a hospital emergency department in order to trigger the willful and wanton negligence standard. If the statute is read in this manner, then section 74.153 would not apply to the emergency medical care given to A.A. because it did not immediately follow evaluation or treatment in the hospital emergency department.

If, on the other hand, the Evaluation or Treatment Phrase modifies the prepositional phrase "in a surgical suite," then it applies only to emergency medical care administered in a surgical suite. Read in this manner, all emergency medical care administered in a hospital emergency department, obstetrical unit, or a surgical suite would be subject to a willful and wanton negligence standard, except that any such emergency medical care adminis-

---

**7.** Appellants identify the word "provision" in the phrase "arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite" as the *verb* that the Evaluation or Treatment Phrase modifies. As Appellees correctly point out, however, "provision" is a noun, not a verb.

tered in a surgical suite must also immediately follow evaluation or treatment in a hospital emergency department to fall within this standard. If the statute is read in this manner, then section 74.153 governs the emergency medical care given to A.A. because any emergency medical care provided in an obstetrical unit—where A.A. received her emergency medical care—would trigger the statute.

Appellees posit that the second option is the only reasonable construction and that applying the first option would lead to an absurdity. *See Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012) (op. on reh'g) (stating that clear statutory text is determinative of legislative intent unless that "would produce an absurd result"). They point out that the effect of reading the statute consistently with the first option would mean that the statute, as applied to a hospital emergency department, would effectively read, "in a hospital emergency department ... immediately following the evaluation or treatment of a patient in a hospital emergency department." Such a reading, they argue, is "clearly absurd" and creates a "nonsensical redundancy" so beyond the limits of "rational interpretation" that "no grammarian or logician would ever" interpret the statute in such a manner.

But the phrase cannot be isolated in the manner Appellees suggest; instead, it must be read in context. *See* Tex. Gov't Code Ann. § 311.011(a) (providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar ...."). As to the hospital emergency department, section 74.153 would actually read, *"arising out of the provision of emergency medical care* in a hospital emergency department ... immediately following the evaluation or treatment of a patient in a hospital emergency department." Tex. Civ. Prac. & Rem. Code Ann. § 74.153 (emphasis added). Although the phrase is somewhat repetitive, replacing the adverbial prepositional phrase "in a hospital emergency department" with "there," an equivalent adverb, demonstrates that this sequence of words creates neither the absurdity nor the "nonsensical redundancy" Appellees attempt to portray.[8] It would read, "arising out of the provision of emergency medical care in a hospital emergency department ... immediately following evaluation or treatment of a patient *there."*

"Emergency medical care," "evaluation," and "treatment" are not identical terms. Giving each term its own independent meaning, the statute would simply mean this—for section 74.153 to apply, a patient must have been either *evaluated* or *treated* in a hospital emergency department and must have then immediately received *emergency medical care* either in the emergency department itself, in an obstetrical unit, or in a surgical suite. In other words, whether the emergency medical care ended up being administered in a surgical suite, in an obstetrical unit, or in the hospital emergency department itself, the patient would have had to receive evaluation or treatment in the emergency de-

---

**8.** When it comes to statutory interpretation, the existence of a redundancy is not fatal to the analysis. As the supreme court has explained,

> While we recognize that we should avoid, when possible, treating statutory language as surplusage, *Sultan v. Mathew,* 178 S.W.3d 747, 751 (Tex. 2005), there are

times when redundancies are precisely what the Legislature intended, *see In re City of Georgetown,* 53 S.W.3d 328, 336 (Tex. 2001) (noting that statutory redundancies may mean that "the Legislature repeated itself out of an abundance of caution, for emphasis, or both").

*Nash,* 220 S.W.3d at 917–18.

partment first to trigger the application of section 74.153.

Both options are grammatically correct, and both are reasonable. Thus, the statute does not yield only one "inescapable interpretation." *See Alex Sheshunoff Mgmt. Servs., L.P.*, 209 S.W.3d at 651–52. The necessity for us to choose between the two grammatically correct, reasonable interpretations in order to construe the statute demonstrates its ambiguity. On the facts of this case, we are simply unable to ascertain the meaning of section 74.153 vis-à-vis the Evaluation or Treatment Phrase from the "plain words" of the statute as written.

## V. Application of Extrinsic Aids and Legislative History

Having determined that section 74.153 is ambiguous, we now look to extrinsic aids and canons of construction for assistance in interpreting it. *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013) ("When a statute is clear and unambiguous, we do not resort to extrinsic aids such as legislative history to interpret the statute."); *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 ("Only when [a statute is] ambiguous do we 'resort to rules of construction or extrinsic aids.'" (quoting *Nash*, 220 S.W.3d at 917)).

## A. Canons of Construction

### 1. The "Last–Antecedent" Canon

Both Appellants and Appellees argue that the "Last–Antecedent" canon supports their interpretations of the statute,

but this canon does not apply at all. This canon states, "A pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." Scalia & Garner, *supra* note 2, at 144–46; *see also Barnhart v. Thomas*, 540 U.S. 20, 27–28, 124 S.Ct. 376, 381–82, 157 L.Ed.2d 333 (2003). Because the Evaluation or Treatment Phrase—"immediately following the evaluation or treatment of a patient in a hospital emergency department"—does not contain a pronoun (e.g., he, she, him, her, it, himself, herself, yourself), a relative pronoun (e.g., who, whom, which, that, what), or a demonstrative adjective (e.g., this, these, those, such), this canon cannot assist us in construing this phrase.[9] *Webster's New World*, *supra* note 3, at 19–25.

### 2. The "Series–Qualifier" Canon

Appellants argue that their interpretation is supported by the "Series–Qualifier" canon of construction, but Appellees argue against the application of this canon because of the statute's syntax. The "Series–Qualifier" canon provides that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Sullivan*, 488 S.W.3d at 297 (citing Scalia & Garner, *supra* note 2, at 147). In this statute, the nouns that both parties ask us to consider—hospital emergency department, obstetrical unit, and surgical suite—do not appear in straight-forward or parallel construction. The first two ap-

---

9. As Scalia and Garner explain, many courts commonly refer to the "Last–Antecedent" canon when it would be more accurate to say that they are applying the "Nearest–Reasonable–Referent" canon. Scalia & Garner, *supra* note 2, at 152. Though their principles are quite similar, the two canons are not interchangeable. *Id.* "Strictly speaking, only pronouns have antecedents," so it is the "Nearest–Reasonable–Referent" canon, not the

"Last–Antecedent" canon, that is used when applying the near-identical principles to "adjectives, adverbs, and adverbial or adjectival phrases." *Id.* Thus, to say that the "Last–Antecedent" canon applies to a word other than a pronoun is a "misnomer," and we should instead refer to the "Nearest–Reasonable–Referent" canon. *Id.* We consider the application of the "Nearest–Reasonable–Referent" canon in section 3 below.

pear in the prepositional phrase "in a hospital emergency department or obstetrical unit," and the third one appears in a separate prepositional phrase "in a surgical suite."[10] Because the noun series is neither straightforward nor parallel, the "Series–Qualifier" canon does not assist us in construing the statute.

Furthermore, this argument ignores an entire phrase—"arising out of the provision of emergency medical care"—that the Evaluation or Treatment Phrase could, under the rules of grammar, modify. Because the Evaluation or Treatment Phrase could modify this participial phrase as well, the "Series–Qualifier" canon, which is limited in its application to nouns or verbs in a series, does not apply.

### 3. The "Nearest–Reasonable–Referent" Canon

The "Nearest–Reasonable–Referent" canon provides that "[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." Scalia & Garner, *supra* note 2, at 152. This canon finds its most common application with syntax issues involving an adverbial phrase that follows a referent, as presented in this case. *Id.*

As discussed above, the three nouns identified by the parties as possible referents do not appear in parallel construction. Two appear in the first prepositional phrase, and the third appears in a separate prepositional phrase, with the conjunction "or" connecting the two prepositional phrases. Additionally, the Treatment or Evaluation Phrase could also modify the entire phrase "arising out of the provision of emergency medical care," a phrase that

is not parallel in construction with either the three nouns identified by the parties or the two prepositional phrases containing those nouns.

Since all of the potential referents appear in unparallel form, the "Nearest–Reasonable–Referent" canon would have applicability here. And, as applied, the "Nearest–Reasonable–Referent" canon supports Appellees' position, suggesting that the Treatment or Evaluation Phrase would modify only its nearest reasonable referent, the phrase "in a surgical suite."

### 4. The "Related Statutes" Canon

The "Related Statutes" canon, however, suggests that section 74.153 be given a different reading. This canon provides that "[s]tatutes *in pari materia* are to be interpreted together, as though they were one law." Scalia & Garner, *supra* note 2, at 252. In other words, laws dealing with the same subject should be read with affiliated statutes in mind and considered to be part of a larger view as evidenced in the entire body of relevant law. *Id.* at 252–53. As Scalia and Garner have explained, this canon "rests on two sound principles: (1) that the body of the law should make sense, and (2) that it is the responsibility of the courts, within the permissible meanings of the text, to make it so." *Id.*

Section 74.153 is but one part of an entire statutory scheme referred to as the Texas Medical Liability Act (TMLA). *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.002–.051, .053–.107, .152–.303, .401–.507 (West 2011), §§ 74.001, .052, .151, .351 (West Supp. 2016). It is included, along with three other statutes, in Subchapter D of the TMLA, under the head-

---

**10.** Scalia and Garner cite *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952), as an example of straightforward and parallel structure. In that case, the modifier "forcibly" in the phrase "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" was held to modify each verb in the list. Scalia & Garner, *supra* note 2, at 148.

ing, "Emergency Care." *See id.* §§ 74.151–.154.

The Emergency Care statutes begin with section 74.151, "Liability for Emergency Care." *Id.* § 74.151. Section 74.151 provides that, with certain exceptions, "a person who in good faith administers emergency care is not liable in civil damages for an act performed during the emergency unless the act is wilfully or wantonly negligent." *Id.* Section 74.151's scope specifically includes persons using automated external defibrillators and first-responder volunteers, and it specifically excludes persons, including their agents, who anticipate remuneration for services they perform. *Id.* This statute, which limits liability for the emergency care provided by imposing a willful and wanton negligence standard, is not limited by location. *Id.*

Section 74.152 immediately follows and extends the same protection—liability limited to willful and wanton negligence—to "[p]ersons not licensed or certified in the healing arts who in good faith administer emergency care as emergency medical service personnel." *Id.* § 74.152. No expectation-of-remuneration exception applies to this statute, but like the preceding statute, this statute is not limited by location. *Id.*

Section 74.154, the section immediately following section 74.153, the statute at issue here, refers back to section 74.153 by incorporating the exact language we are called upon to construe in this case—"arising from the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department." *Id.* § 74.154. Section 74.154 augments section 74.153 by providing instructions that trial courts must give to jurors who deliberate on cases that fall within the ambit of section 74.153:

> In an action for damages that involves a claim of negligence arising from the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, *the court shall instruct the jury to consider, together with all other relevant matters:*
>
> *(1) whether the person providing care did or did not have the patient's medical history or was able or unable to obtain a full medical history, including the knowledge of preexisting medical conditions, allergies, and medications; [and]*
>
> *(2) the presence or lack of a preexisting physician-patient relationship or health care provider-patient relationship . . . .*

*Id.* (emphasis added).

Section 74.154, through the mandatory jury instruction provided, directs jurors who are deliberating in cases involving emergency medical care occurring in a hospital setting, specifically, "in a hospital emergency department or obstetrical unit or in a surgical suite," that they must consider whether the provider had access to a patient's medical history and whether the patient and provider had a preexisting relationship prior to the emergency. *Id.* Although this statute repeats the three locations at issue here, it primarily focuses on the risks attendant to administering care to patients who are strangers to the medical care providers in an emergency situation.[11] *See id.*

---

11. Section 74.154(b) goes on to provide that the mandatory instructions do not apply to medical care or treatment: (1) that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient;

These four statutes, read together, signal a concern that in circumstances when emergency medical care must occur in the dark—when medical care providers or first responders perform blindfolded as to the recipient's relevant past and current medical conditions—those medical care providers should not be held to a standard of ordinary negligence. Instead, before the beneficiary of emergency medical care administered under such inauspicious circumstances may seek damages for negligent care received, he or she must prove that the medical care provider deviated from the standard of care by a willful and wanton degree. *See id.* §§ 74.151–.154.

Applying the "Related Statutes" canon leads us to conclude that the legislative scheme with regard to emergency medical care focuses more on *when* rather than *where* the care was administered. The relevant inquiry for jurors in determining liability in these cases is whether the situation presented an emergency requiring medical care by a provider who had no prior knowledge, or realistic opportunity to acquire knowledge, about the patient's history. In such circumstances, the overall statutory scheme provides a limitation on liability for medical care that under more propitious circumstances—care administered by a patient's longtime family physician, for example—might constitute negligent care.

## B. Legislative History

Legislative history certainly supports this view. *See TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011) ("When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent."). It demonstrates unequivocally that the legislature was not concerned as much about where the patient ended up receiving the medical care as how the patient got there. Indeed, it reveals a focus on the Evaluation or Treatment Phrase—"immediately following the evaluation or treatment of a patient in the hospital emergency department"—rather than the "surgical suite" location. The legislative history illustrates that the primary legislative concern centered upon the journey, not the destination.

The original version of this statute passed by the House in House Bill 4 addressed "the provision of emergency medical care" without any limitation as to the location where such care was administered. Tex. H.B. 4, 78th Leg., R.S. (2003). The Committee–substituted version of House Bill 4 that the Senate passed referred to only one location where the emergency medical care addressed by the statute would be administered—"in a hospital emergency room or department." Tex. H.B. 4, 78th Leg., 1st C.S. (2003). Eventually, the Conference Committee version—containing the language that we construe today—passed both chambers, but not before legislators in both chambers discussed the practical consequences of adding the two new locations, as set out below.

After the Conference Committee version was debated in the Senate, the Senate voted unanimously to publish in the Senate Journal certain portions of the debate in order "to establish legislative intent regarding HB4." S.J. of Tex., 78th Leg., R.S. 5003 (2003), http://www.journals.senate. state.tx.us/sjrnl/78r/pdf/sj06-01-f.pdf.

(2) that is unrelated to the original medical emergency; or
(3) that is related to an emergency caused in whole or in part by the negligence of the [health care provider]."

Tex. Civ. Prac. & Rem. Code Ann. § 74.154(b).

Among the discussions included in the Senate Journal is the following dialogue between Senators Bill Ratliff and Juan Hinojosa regarding how the statute would apply to a hypothetical scenario involving emergency medical care during labor and delivery:

> **Sen. Hinojosa:** Governor, on page 61, lines 12–13, the bill adds in the words "obstetrical unit" and "surgical suite" to the new section on the standard of proof now required for emergency care. Does this mean that now the higher standard applies to emergency care in these areas of the hospital, not just the emergency room?
>
> **Sen. Ratliff:** Only if the same emergency that brought the patient into the ER still exists when the patient gets to the OR or Labor and Delivery area.
>
> **Sen. Hinojosa:** What about a case where the patient goes to the emergency room, is stabilized and then transferred to an OB unit or surgical suite and then another emergency occurs?
>
> **Sen. Ratliff:** No, this does not apply to emergencies that arise during surgery or labor and delivery. It only applies to emergencies that exist when the patient is brought to the ER and still exists when the patient goes *immediately to an OB unit or surgical suite from the ER.*

*Id.* at 5004 (emphasis added).

Likewise, the House entertained discussions regarding the meaning of the phrases we have been called upon to construe here. They too directed that their discussions be published as a statement of legislative intent. H.J. of Tex., 78th Leg., R.S. 6041 (2003), http://www.lrl.state.tx.us/scanned/HouseJournals/78/day84final.pdf. These discussions included the following:

> **Representative Eiland:** Chairman Nixon, on the medical malpractice Section 10 portion of the claim of the bill—you and I talked about this briefly but I want to make sure—in the section on page 61, standard of proof regarding emergency medical care, we added, basically, obstetrics to the definition. You and I talked but I want to make sure I understand. A woman goes to the hospital with preterm contractions and her physician is not there, but whoever that physician has on call for their group or whatever, sees the lady and say she is hospitalized and stabilized, but later on the baby's heart rate drops because maybe the cord is wrapped around its neck or something, and they say we have to do an emergency C–section right now. Under the bill, would that situation arise where the new higher standard would be required?
>
> **Representative Nixon:** No, it is the intent of this legislation that emergency situations where you do not have a prior relationship with the patient is the one given the protection. If you have a prior relationship with a patient, and you know about their medical history and their background you should not be given the protection to the same extent as someone who just shows up in the emergency room. You have no history, you have to treat them. That is why we have a different standard of care.

*Id.* at 6040.

Read in light of the legislature's unmistakable, expressed concern about the application of this statute to a fact scenario nearly identical to the one that presents itself here, we cannot ignore what plain grammar also tells us is a reasonable reading of this ambiguous statute—that section 74.153 does not apply to patients who were not evaluated or treated in a hospital's emergency department immediately before receiving emergency care. Such an interpretation achieves our primary objective—ascertaining and effectuating legislative in-

tent. *TGS–NOPEC Geophysical Co.,* 340 S.W.3d at 439.

## VI. The Evaluation or Treatment Phrase Applies to All Locations

Though we recognize that the "Nearest–Reasonable–Referent" canon would suggest a contrary result, applying the "Related Statutes" canon in conjunction with the legislative history published by both legislative chambers for the purpose of expressing legislative intent, we hold that the Evaluation or Treatment Phrase applies to all three locations and is not limited only to emergency medical care provided in a surgical suite. The protections of section 74.153 are triggered by the evaluation and treatment of the patient in the hospital emergency department. Once triggered, whether the subsequent emergency medical care is administered in the hospital emergency department itself or whether the patient is then transferred to an obstetrical unit or a surgical suite to receive the emergency medical care, a willful and wanton negligence standard applies.

## VII. Conclusion

We hold that section 74.153, which provides a willful and wanton standard for liability, does not apply to emergency medical care provided in an obstetrical unit when the patient was not evaluated or treated in a hospital emergency department immediately prior to receiving the emergency medical care. We reverse the trial court's summary judgment and remand for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d), 43.3(a).

GABRIEL, J., concurs without opinion.