Sherry Radack, Chief Justice *809 In this medical malpractice case, we consider (1) whether Texas Civil Practice and Remedies Code section 74.153[1] applies to emergency medical care provided in an obstetrical unit if the patient has not first been evaluated in an emergency room, and (2) whether there is legally sufficient evidence to support the jury's award of future medical expenses. We affirm.
BACKGROUND
Factual Background
On May 26, 2011, Dawn Leal arrived at Kingwood Medical Center for an elective induction. She was admitted and treated by Dr. Christopher Glenn. Dr. Glenn had been Mrs. Leal's obstetrician throughout her first pregnancy and subsequent delivery in June 2008, and Mrs. Leal began seeing Dr. Glenn again around the 15-week mark of her second pregnancy. Thereafter, she saw Dr. Glenn once a month for the next five months. Dr. Glenn knew that Mrs. Leal was a diabetic, so he scheduled her for an elective induction at 39 weeks of pregnancy.
On the day of the scheduled induction, Mrs. Leal was induced at 8:57 a.m., and Dr. Glenn checked on her progress at around noon. At around 2:50 p.m., Mrs. Leal's cervix was completely dilated and the nurses informed Dr. Glenn that she was ready to begin pushing. Dr. Glenn arrived to attend her delivery at 4:45 p.m.
Mrs. Leal began pushing, the baby's head crowned, delivered, and then his shoulder became lodged against Mrs. Leal's pubic symphysis bone, a complication known as shoulder dystocia. Once Dr. Glenn diagnosed the shoulder dystocia, he also noted that the baby's umbilical cord was looped around his head. Dr. Glenn then had several minutes to deliver the child or the baby could possibly suffer brain damage or possible death.
Dr. Glenn began performing maneuvers to dislodge the baby's shoulder. Specifically, he instructed the nurses to perform the McRoberts Maneuver, which involves hyperflexing the mother's legs and pushing her knees back towards her shoulders to open the bony structure of the pelvis. The nurses also applied supra-pubic pressure to Mrs. Leal's pubic bone to assist in dislodging the baby's shoulders.
Fifteen seconds later, the baby was delivered. He suffered a permanent brachial plexus injury, which the Leals contend was due to Dr. Glenn's pulling, twisting, and turning of the baby's head to hasten delivery.
Procedural Background
The Leals filed a medical malpractice suit against Dr. Glenn and Northeast OB/GYN Associates, LLP, alleging that Dr. Glenn was negligent in failing to use ordinary care during the baby's delivery and that his negligence was the proximate cause of the baby's injury. The Leals further *810 alleged that OB/GYN Associates was vicariously liable under the doctrine of respondeat superior.[2]
The case was tried to a jury on June 23, 2016. At the close of the evidence, Dr. Glenn moved for a directed verdict, arguing that there was legally insufficient evidence of the willful and wanton negligence required of an emergency health care provider under Section 74.153 of the Texas Civil Practices and Remedies Code. He also alleged that there was legally insufficient evidence of future medical expenses. The trial court denied the motion for directed verdict. After the charge conference, Dr. Glenn objected to the jury question on negligence and future medical expenses on the same grounds, which were also overruled.
The jury returned a verdict in the Leals' favor, awarding them (1) $100,000 for physical pain and mental anguish sustained in the past, (2) $500,000 for future physical pain and mental anguish, (3) $250,000 for future disfigurement, (4) $500,000 for physical impairment, (5) $150,000 for past medical expenses, (6) $300,000 for future medical expenses until the child reaches 18 years of age, and (7) $900,000 for future medical expenses after the child reaches 18 years of age.
Dr. Glenn moved for a judgment notwithstanding the verdict ["JNOV"], again claiming that there was no evidence of willful and wanton negligence and that there was legally insufficient evidence of future medical expenses.
The trial court denied the motion for JNOV, and entered a final judgment in accordance with the jury's verdict. This appeal followed.
INTERPRETATION OF CIVIL PRACTICES & REMEDIES CODE § 74.153
In his first two issues on appeal, Dr. Glenn contends the trial court erroneously interpreted section 74.153 and failed in not applying its negligence standard-requiring a plaintiff to show "willful and wanton negligence"-to Dr. Glenn's delivery of Mrs. Leal's child. Specifically, Dr. Glenn contends:
[T]he trial court erroneously denied Appellants' motion for directed verdict and for judgment notwithstanding the verdict ("JNOV"), where Section 74.153 of the Texas Civil Practice and Remedies Code governed the standard of proof in this case and Appellees wholly failed to provide legally sufficient evidence of willful and wanton negligence as required under Section 74.153.
[T]he trial court abused its discretion in refusing to submit Appellants' requested questions and instructions regarding the application of Sections 74.153 and 74.154 of the Texas Civil Practice and Remedies Code, and whether the error in refusing to submit the questions and instructions probably resulted in the rendition of an improper judgment.
Section 74.153
Both issues require this Court to interpret section 74.153 and to determine whether the "willful and wanton" standard of negligence applies in this case. Section 74.153 provides:
In a suit involving a health care liability claim against a physician or health care provider for injury to or death of a patient arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately *811 following the evaluation or treatment of a patient in a hospital emergency department, the claimant bringing the suit may prove that the treatment or lack of treatment by the physician or health care provider departed from accepted standards of medical care or health care only if the claimant shows by a preponderance of the evidence that the physician or health care provider, with wilful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances.
TEX. CIV. PRAC. & REM. CODE ANN. § 74.153.
The Leals argued, and the trial court agreed, that before treatment in either a hospital emergency department, an obstetrical unit, or a surgical suite would trigger application of the statute, there must first be the "evaluation or treatment of a patient in a hospital emergency department." In other words, obstetrical deliveries that begin in an emergency room, but conclude in an obstetrical unit, would trigger application of the statute, but a scheduled delivery that begins in an obstetrical unit, but later develops into an emergency would not. Dr. Leal, in contrast, contends that when an emergency develops during a delivery in an obstetrical unit, the statute is triggered and the doctor gets the benefit of the "willful and wanton" standard of negligence, regardless of whether the patient was ever evaluated in a hospital emergency department beforehand.
Applicable Law and Standard of Review
Statutory interpretation is a question of law. In re Canales , 52 S.W.3d 698, 701 (Tex. 2001). Our primary goal in interpreting a statute is to ascertain and to effectuate the Legislature's intent. Id. at 702. In doing so, we examine the statute's plain language. Helena Chem. Co. v. Wilkins , 47 S.W.3d 486, 494 (Tex. 2001) ; Fitzgerald v. Advanced Spine Fixation Sys., Inc. , 996 S.W.2d 864, 865 (Tex. 1999). We assume that the legislature tried to say what it meant; therefore, the statute's words should be the surest guide to the Legislature's intent. Fitzgerald , 996 S.W.2d at 866. We read words and phrases in context and construe them according to the rules of grammar and usage. See TEX. GOV'T CODE ANN. § 311.011(a) (West 2013).
In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses; rather, we examine the entire act. Meritor Auto., Inc. v. Ruan Leasing Co. , 44 S.W.3d 86, 90 (Tex. 2001) ; see TEX. GOV'T CODE ANN. § 311.011(a) (instructing courts to construe words and phrases in context). The Code Construction Act lists factors that may be considered in construing a statute, whether or not the statute is ambiguous on its face. TEX. GOV'T CODE ANN. § 311.023. These factors include, among other things, (1) the statute's objectives; (2) the circumstances under which the statute was enacted; (3) the statute's legislative history; (4) common law, former law, and similar provisions; and (5) the consequences of the statutory construction. Id. § 311.023(1) - (5) ; Canales , 52 S.W.3d at 702. We presume that the Legislature intended a just and reasonable result. TEX. GOV'T CODE ANN. § 311.021(3) ; Wilkins , 47 S.W.3d at 493.
D.A. v. Texas Health Presbyterian Hospital of Denton
The Fort Worth Court of Appeals has addressed the issue raised in this case on nearly identical facts. In D.A. v. Texas Health Presbyterian Hospital of Denton , 514 S.W.3d 431, 432 (Tex. App.-Fort Worth 2017, pet. filed), the plaintiff, M.A., like Mrs. Leal here, underwent an elective induction of labor. During delivery, M.A.'s baby's head delivered, but the shoulders became lodged. Id. After maneuvers to release the baby's shoulders, the child was delivered, and, like Mrs. Leal's baby, suffered a brachial plexus injury. Id.
*812 M.A.'s doctor moved for summary judgment, arguing that M.A. was required to prove negligence by a willful and wanton standard. Id. The trial court agreed and granted the doctor's motion for summary judgment on M.A.'s ordinary negligence claims. Id. at 433. The Fort Worth Court of Appeals granted a permissive appeal to consider "the question of whether section 74.153 applies to medical care provided in an obstetrical unit without the patient's first having been evaluated in a hospital emergency department." Id. In analyzing the issue, the Fort Worth court conducted a two-step analysis. First, it considered whether the statute was ambiguous, and second, having decided that it was, it considered extrinsic aids and legislative history. Id. at 433, 439.
In determining whether the statute was ambiguous, the court applied the rules of grammar and determined that there were two reasonable, alternative constructions. The phrase "arising out of the provision of emergency medical care in a hospital emergency department" could modify the prepositional phrase "in a surgical suit," in which case all emergency medical care administered in a hospital emergency department, obstetrical unit, or surgical suite would be subject to a willful and wanton standard of negligence, with the additional requirement that emergency medical care in a surgical suite must immediately follow an evaluation or treatment in an emergency department. Id. at 437-38. Or, the phrase "arising out of the provision of emergency medical care in a hospital emergency department" could modify the participial phrase "arising out of the provision of emergency medical care," in which case emergency medical care administered in a hospital emergency department, an obstetrical unit, or a surgical suit would trigger the willful and wanton standard of negligence only if the care in one of those three locations immediately followed an evaluation or treatment in a hospital emergency department. Id. at 437.
The court used the following chart to illustrate the two reasonable alternatives.
Id. at 437.
Because both interpretations were grammatically correct, the court held that it could not ascertain the meaning of the statute from its "plain words" as written and turned to extrinsic aids and legislative history for assistance in interpreting the statute. Id. at 439.
The court then reviewed four canons of statutory construction-the "last-antecedent"
*813 canon, the "series-qualifier" canon, the "nearest-reasonable referent" canon, and the "related statutes" canon. Id. at 439-40. First, the court determined that the "last antecedent" canon did not apply because it refers to an interpretation of pronouns, and the clause being interpreted did not contain a pronoun. Id. at 439.
Second, the court determined that the "series-qualifier" canon did not apply because it refers to a straightforward, parallel construction of nouns or verbs in a series, and the clause to be interpreted was "neither straightforward nor parallel." Id.
Third, the court concluded that the "nearest-reasonable-referent" canon could be applicable because it involves the interpretation of a clause other than a parallel series of nouns and verbs, and provides that the modifier applies only to the nearest reasonable referent. Id. at 439-40. As such, application of this canon supported the suggestion that only treatment in a surgical suite requires a previous evaluation in a hospital emergency department. Id. at 440.
Finally, the court discussed the "related statutes" canon, which provides that "statutes in pari materia are to be interpreted together, as though they were one law." Id. In so doing, the court considered section 74.151, which provides that "a person who in good faith administers emergency care is not liable in civil damages for an act performed during the emergency unless the act is willfully and wantonly negligent[.]" Id. at 441 (considering TEX. CIV. PRAC. & REM. CODE ANN. § 74.151 ). The court noted that the statute, which also limits liability for emergency care by providing a willful and wanton negligence standard, is not limited by location. Id.
The court also considered section 74.152, which also limits liability to willful and wanton negligence for "persons not licensed or certified in the healing arts who in good faith administer emergency care as emergency medical service personnel." Id. (considering TEX. CIV. PRAC. & REM. CODE ANN. § 74.153 ). Again, the court noted that this statute is not limited by location. Id.
And, the court looked at section 74.154, which mandates a jury charge in cases involving section 74.153-the statute being interpreted in this case-that instructs the jury to consider (1) whether the person providing care had the patient's medical history and (2) the presence of a pre-existing physician-patient relationship. Id. (considering TEX. CIV. PRAC. & REM. CODE ANN. § 74.154 ).
Considering these four statutes in pari material , the court noted that all four signaled a concern for cases in which emergency medical care must occur "in the dark" and "primarily focus[ ] on the risks attendant to administering care to patients who are strangers to the medical care providers in an emergency situation." Id. at 441. The court concluded that application of the "related statutes" canon compelled the conclusion that the legislative scheme "focuses more on when rather than where the care was administered." Id.
The court also looked at the legislative history of section 74.153 and noted that "the legislature was not concerned as much about where the patient ended up receiving the medical care as how the patient got there." Id.
The Fort Worth Court of Appeals concluded by holding as follows:
The protections of section 74.153 are triggered by the evaluation and treatment of the patient in the hospital emergency department. Once triggered, whether the subsequent emergency medical care is administered in the hospital emergency department itself or whether the patient is then transferred to an obstetrical unit or a surgical suite to receive the emergency medical care, a *814 willful and wanton negligence standard applies.
....
[S]ection 74.153, which provides a willful and wanton standard for liability, does not apply to emergency medical care provided in an obstetrical unit when the patient was not evaluated or treated in a hospital emergency care department immediately prior to receiving the emergency medical care.
Id. at 444.
Analysis
We agree with the Fort Worth court's analysis, and likewise, we conclude that section 74.153 applies to emergency treatment given in hospital emergency departments, obstetrical units, and surgical suites if the patient was evaluated or treated in a hospital emergency care department immediately prior to receiving the emergency medical care. When, as here, the patient's treatment began as an elective induction in the obstetrical unit by her treating physician and develops into an emergency during the course of the delivery, section 74.153 and its heightened requirement of willful and wanton negligence does not apply.
Accordingly, we overrule issues one and two.
FUTURE MEDICAL EXPENSES
In issues three and four, Dr. Glenn contends that the trial court erred in denying his motions for directed verdict and JNOV because the evidence is legally insufficient to support the awards for future medical expenses.
Standard of Review
When a motion for JNOV is premised on the legal sufficiency of the evidence to support a claim, rulings on a motion for JNOV and directed verdict are reviewed under the same legal-sufficiency test as are appellate no-evidence challenges. JSC Neftegas-Impex v. Citibank, N.A. , 365 S.W.3d 387, 395 (Tex. App.-Houston [1st Dist.] 2011, pet. denied) ; see also In re Humphreys , 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review."). Such a no-evidence challenge "will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 751 (Tex. 2003) (quoting Merrell Dow Pharms., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997) ).
Evidence of Fees Actually Paid or Incurred
In issue three, Dr. Glenn contends as follows:
[T]he trial court erroneously denied Appellants' motion for directed verdict and for JNOV, where Appellees presented legally insufficient evidence to support the award of future medical expenses awarded in the total amount of $1,200,000. Appellees' sole evidence addressed only the amounts currently charged or billed by providers, and failed to exclude the difference between such amounts and charges the service providers bill but would have no right to be paid, as required by Section 41.015 of the Texas Civil Practice and Remedies Code.
Dr. Glenn argues that there was no evidence that the future medical expenses would be "actually paid or incurred," as required by Texas Civil Practice and Remedies Code section 41.0105[3] because the *815 Leals' expert testified that his calculation of future medical expenses was based on what providers actually charge, and did not consider what the providers might be entitled to recover if there are discounts, agreements, or laws limiting what they can charge.
In Haygood v. De Escabedo , 356 S.W.3d 390, 398 (Tex. 2011), the supreme court, in reviewing a claimant's recovery of past medical expenses, held that section 41.0105 limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant. Even though Haygood's healthcare providers billed $110,000 for their services, they were limited by federal law from charging more than $27,000 because Haygood was covered by Medicare Part B. See ids="7316904" index="40" url="https://cite.case.law/sw3d/356/390/#p398">id. at 392. Because section 41.0105 limited the amount that the medical providers could recover to the amount that they were entitled to be paid-$27,000-evidence that they actually billed a higher amount was irrelevant. Id. at 399.
Here, however, there is no evidence of any applicable law or contractual agreement limiting the amount that the providers could charge for medical expenses incurred in the future, and the jury was asked to fairly and reasonably compensate for those expenses. To assume that the amount awarded is beyond the amount of future medical bills would be speculative. See Metro. Transit Auth. v. McChristian , 449 S.W.3d 846, 854 (Tex. App.-Houston [14th Dist.] 2014, no pet.) (finding no abuse of discretion in admitting evidence of full value of services rendered because "[t]his record offers no basis for a conclusion that the medical expenses at issue here included list price charges for which the service providers billed but had 'no right to be paid.' "); Big Bird Tree Servs. v. Gallegos , 365 S.W.3d 173, 176 (Tex. App.-Dallas 2012, pet. ref'd) ("Unlike Haygood , there was no evidence of any contract that would have prohibited Parkland or Southwestern from charging Gallegos for the full value of the services rendered. Thus, we cannot conclude the hospital was not 'entitled' to recover for the actual value of the services rendered."); see also Guzman v. Jones , 804 F.3d 707, 712-13 (5th Cir. 2015) (refusing to apply Haygood and stating that "[r]educed prices that [an uninsured plaintiff] may have received had he participated in health benefits or insurance programs for which he may have been eligible are irrelevant according to Texas law").
Because services for future medical expenses have not yet been rendered at the time an award is made, without evidence of future discounts, whether there will laws in place limiting what the providers can charge when the services are, in fact, rendered, or whether the Leals will have insurance coverage at all, Dr. Glenn has not demonstrated that the jury's award for future medical damages is legally insufficient.
Accordingly, we overrule issue three.
Consideration of the Affordable Care Act
In issue four, Dr. Glenn contends:
[T]he trial court erroneously denied Appellants' motions for directed verdict and for JNOV, where Appellees presented legally insufficient evidence to support the award of future medical expenses awarded in the total amount of $1,200,000. Appellants sole evidence failed to address the impact of the Patient Protection and Affordable Care Act ("Affordable Care Act") on the life care plan, and failed to limit future damages to the premiums charged for that health *816 insurance obtained from the federal government and any out of pocket expenses reasonably likely to be incurred in obtaining coverage.
Dr. Glenn argues that "with the enactment of the ACA,[4] it is no longer fair to continue to feed the jury the fiction that future medical expenses projected by a life care plan ... will or could be paid entirely out-of-pocket." This argument is based on the assumption that all individuals can and will obtain insurance coverage, thus they will never be billed a provider's "full" or "list" rate, but will have to pay only their premiums and out-of-pocket expenses.
The ACA does not require an individual to purchase insurance, though there is a statutory penalty for one's failure to do so. See Nat'l Fed. of Indep. Bus. v. Sebelius , 567 U.S. 519, 568, 132 S.Ct. 2566, 2597, 183 L.Ed.2d 450 (2012) ("Neither the Act nor any other law attaches negative legal consequences to not buying health insurance, beyond requiring a payment to the IRS.... [I]f someone chooses to pay rather than obtain health insurance, they have fully complied with the law.").
Therefore, Dr. Glenn's assumption that the Leals will have insurance coverage in the future, and in particular, coverage for the items incorporated in the future medical bills presented to the jury, is speculative. See McChristian , 449 S.W.3d at 854 (holding unadjusted medical bills properly admitted by uninsured plaintiff); Guzman , 804 F.3d at 711-12 (holding that plaintiff not required to purchase insurance, thus entitled to recover entire amount billed by providers). Dr. Glenn has not demonstrated that the Leals' evidence is insufficient because it fails to provide speculative information about how their future medical bills might be affected if they have insurance when such expenses are incurred.
We overrule issue four.
CONCLUSION
We affirm the trial court's judgment.

See Tex. Civ. Prac. & Rem. Code Ann. § 74.153 (West 2011).

Hereinafter, we refer to Dr. Glenn and Northeast OB/GYN Associates, LLP collectively as "Dr. Glenn" when discussing the legal proceedings by and against both appellants.

In addition to any other limitation under the law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred on behalf of the claimant. Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2015).

See 42 U.S.C. §§ 18001.-18122 (West Supp. 2017).