# IN THE SUPREME COURT OF TEXAS

════════════
No. 18-0344
════════════

CHRISTOPHER JAMES GLENN, M.D. AND NORTHEAST OB/GYN
ASSOCIATES, L.L.P., PETITIONERS,

v.

JOSEPH LEAL AND DAWN LEAL, INDIVIDUALLY AND AS NATURAL PARENTS,
NEXT FRIENDS AND LEGAL GUARDIANS OF A.L., A MINOR, RESPONDENTS

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
════════════════════════════════════════════

**PER CURIAM**

JUSTICE BLAND did not participate in the decision.

In this health care liability case, we must determine whether Texas Civil Practice and Remedies Code section 74.153's standard of willful and wanton negligence applies to emergency medical care rendered to a patient in a hospital's obstetrical unit, when the patient was not first attended to in a hospital's emergency department. In light of our decision in *Texas Health Presbyterian Hospital of Denton v. D.A.*, 569 S.W.3d 126 (Tex. 2018), we reverse the court of appeals' judgment and remand this case to the trial court for a new trial.

Dawn Leal saw Dr. Christopher Glenn throughout her pregnancy and for the delivery of the Leals' first child. Dr. Glenn is an obstetrician and gynecologist who was a partner at Northeast

OB/GYN Associates when he provided medical care to Dawn. Because Dawn had already established a physician–patient relationship with Dr. Glenn, the Leals decided that Dawn would again see Dr. Glenn for all prenatal care during her second pregnancy—the pregnancy that resulted in the incident at issue in this case. Dr. Glenn was aware that Dawn was diabetic and recommended inducing labor to minimize possible complications with the birth. The Leals accepted Dr. Glenn's recommendation and scheduled the elective induction.

During delivery, Dr. Glenn discovered that the baby's shoulder was lodged against Dawn's pubic bone, a condition known as shoulder dystocia. Dr. Glenn also observed that a nuchal cord was present—a complication where the umbilical cord wraps around the baby's neck. Understanding that shoulder dystocia and a nuchal cord can pose a threat to a baby's life, Dr. Glenn worked quickly to deliver the baby, performing maneuvers to dislodge the shoulder. The baby suffered a permanent brachial plexus injury.

The Leals filed a health care liability claim against Dr. Glenn and Northeast OB/GYN, claiming that Dr. Glenn failed to exercise ordinary care when delivering the Leals' baby, and that his negligence proximately caused the baby's brachial plexus injury. Dr. Glenn argued that section 74.153's standard of willful and wanton negligence applies in this case. The case was tried to a jury. At the close of evidence, Dr. Glenn moved for a directed verdict, claiming there was legally insufficient evidence of willful and wanton negligence as required under section 74.153 and of future medical expenses. *See* TEX. CIV. PRAC. & REM. CODE § 74.153 ("[I]n a suit involving a health care liability claim against a physician . . . for injury to or death of a patient arising out of the provision of emergency medical care . . . ."). The trial court denied Dr. Glenn's motion for a

2

directed verdict. At the charge conference, Dr. Glenn objected to the jury charge and proposed two alternative jury questions: (1) whether Dr. Glenn provided "emergency medical care" to Dawn and the baby; and (2) whether Dr. Glenn's "willful and wanton negligence" proximately caused the baby's injury. The trial court overruled Dr. Glenn's objection, refused his proposed questions, and instructed the jury to apply an ordinary negligence standard.

The jury returned a verdict in the Leals' favor, finding that Dr. Glenn was negligent under an ordinary—not willful and wanton—negligence standard. In finding that Dr. Glenn was negligent, the jury awarded the Leals $2.7 million in total damages. Dr. Glenn filed a motion for judgment notwithstanding the verdict (JNOV), claiming that there was no evidence of willful and wanton negligence, and that there was legally insufficient evidence of future medical expenses. The trial court denied Dr. Glenn's motion for JNOV and entered a final judgment in accordance with the jury's verdict.

On appeal, Dr. Glenn argued that the trial court erred in denying his motion for directed verdict and motion for JNOV. 546 S.W.3d 807, 810 (Tex. App.—Houston [1st Dist.] 2018). Specifically, Dr. Glenn argued that courts should construe section 74.153's standard of willful and wanton negligence to apply in emergency situations in hospital obstetrical units. *Id.* at 810–11. He also argued that the trial court erred in failing to submit the emergency medical care issue to the jury and in denying his motion for JNOV as to the sufficiency of the evidence for future medical expenses. *Id.* at 814. In rejecting Dr. Glenn's claims, the court of appeals relied heavily on the Second Court of Appeals' decision in *Texas Health*. *Id.* at 811–14 (citing *D.A. v. Tex. Health Presbyterian Hosp. of Denton*, 514 S.W.3d 431 (Tex. App.—Fort Worth 2017), *rev'd*, 569 S.W.3d

3

126 (Tex. 2018)). In that decision, the court of appeals refused to apply the standard of willful and wanton negligence from section 74.153 to cases in which emergency medical treatment is rendered only in a hospital's obstetrical unit and not first in an emergency department. *Tex. Health*, 514 S.W.3d at 444.

The facts in *Texas Health* are very similar to the facts in the present case. There, a mother elected to induce labor, but during delivery, the baby's shoulder became stuck on the mother's pubic bone, and shoulder dystocia occurred. *Tex. Health*, 569 S.W.3d at 128. The doctor reached into the birth canal and dislodged the baby, who suffered a brachial plexus injury. *Id.* The parents sued the doctor and his practice group for negligence. *Id.* at 128–29. The trial court granted partial summary judgment in the doctor's favor, but permitted the plaintiff to pursue an interlocutory appeal on the question of which negligence standard applies in these types of cases. *Id.* at 129.

We rejected the Second Court of Appeals' conclusion and held that section 74.153's plain language extends to emergency medical care rendered in an obstetrical unit even if the patient was not first treated in an emergency department. *Id.* at 135–37. In reaching this conclusion, we reasoned that the statute is unambiguous, so the consultation of extra-textual sources was not appropriate. *Id.* at 133–35. Giving the statute's words their customary meaning and deploying rules of grammar, we determined that section 74.153's "'immediately following' phrase modifies the reference to care provided in a surgical suite but not the references to care provided in a hospital emergency department or obstetrical unit." *Id.* at 135. In other words, a patient need not be treated in an emergency department before receiving emergency care in an obstetrical unit in order to trigger the section 74.153 standard of willful and wanton negligence. *See id.* at 137.

4

In the present case, the Leals and Dr. Glenn disagree on the question of whether Dr. Glenn provided emergency medical care in delivering the baby. Indeed, Dr. Glenn sought to have this question submitted to the jury, but the trial court refused his request. The court of appeals did not reach the question of whether Dr. Glenn provided emergency medical care because it determined that section 74.153 did not apply to emergency medical care rendered in a hospital's obstetrical unit, unless the patient was first treated in an emergency department. 546 S.W.3d at 814.

In accordance with *Texas Health*, we hold that the court of appeals erred in its application of the section 74.153 negligence standard. "A judgment will not be reversed for charge error unless the error was harmful. . . . Charge error is generally considered harmful if it relates to a contested, critical issue." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009) (citations omitted) (applying TEX. R. APP. P. 61.1). In the present case, whether the jury should apply a standard of willful and wanton negligence was a critical issue—it went to the very question the jury was tasked with answering to decide liability. As Dr. Glenn's objection in the trial court demonstrates, the question was also contested. In addition, the issue of whether Dr. Glenn provided emergency care to Dawn was critical and contested—it was a prerequisite for applying the section 74.153 negligence standard, and the Leals argue that Dr. Glenn's care was not emergency care. Accordingly, the charge error in this case was harmful.

When a trial court gives an erroneous charge that instructs the jury on the incorrect law applicable in the case, we have held that a new trial is the appropriate remedy. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (citation omitted) ("But because the charge was defective, and Eagle Star properly objected, it is entitled to a new trial."); *see also Ford Motor*

5

*Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) (citation omitted) ("[W]here, as in the pending case, the theory of recovery was defectively submitted, as opposed to a situation where the plaintiff 'refused to submit a theory of liability' after defendant's objection, the proper remedy is to remand for a new trial."); *George Grubbs Enters., Inc. v. Bien*, 900 S.W.2d 337, 338 (Tex. 1995) (reversing the judgment of the court of appeals after finding jury charge error and remanding the case to the trial court for further proceedings). Having found harmful error in the jury charge, we grant Dr. Glenn's petition for review and, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the judgment of the court of appeals and remand this case to the trial court for a new trial.

OPINION DELIVERED: February 21, 2020