**Affirmed and Opinion filed October 30, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00381-CV

**METROPOLITAN TRANSIT AUTHORITY, Appellant**

**V.**

**CALVIN McCHRISTIAN, Appellee**

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2010-64777**

## O P I N I O N

The Metropolitan Transit Authority ("Metro") appeals a judgment in this personal injury case awarding Calvin McChristian $22,650 for past medical expenses and $5,000 for past physical pain and mental anguish.  In three issues, Metro argues that the trial court erred by (1) entering judgment for McChristian because the medical evidence was insufficient to support a judgment for damages; (2) admitting McChristian's medical bills into evidence "without requiring

competent evidence that such bills were actually 'paid or incurred' by" McChristian; and (3) denying Metro's motion for new trial because McChristian's trial counsel made an incurable jury argument. We affirm.

## BACKGROUND

McChristian sued Metro to recover damages for a neck injury he attributed to a February 8, 2010 collision in downtown Houston between the Metro light rail train he was riding and a Metro bus. A two-day jury trial was held on February 5 and February 8, 2013. McChristian testified at trial that he was transported by ambulance to St. Joseph Medical Center after the accident because he felt pain in his neck, and was diagnosed with a neck sprain. McChristian was prescribed physical therapy. An MRI performed on March 16, 2010, revealed multi-level disc herniations. McChristian then was referred to Dr. Jeffrey Reuben, an orthopedic surgeon.

Dr. Reuben testified by deposition that he examined McChristian and the MRI, and diagnosed McChristian as having discogenic cervical pain arising from an injury to the discs in the neck. Dr. Reuben opined that, based on a reasonable degree of medical probability, McChristian's neck injury was "caused by the train/bus accident of February 8, 2010."

McChristian introduced medical bills totaling $31,264.99 into evidence. The jury was not asked to determine liability; it was asked to find "[w]hat sum of money, if paid now in cash, would fairly and reasonably compensate Calvin McChristian for his injuries, if any, that resulted from the occurrence in question?" The jury returned a unanimous verdict and awarded McChristian damages of (1) $22,650 for "[r]easonable expenses of necessary medical care incurred in the past;" and (2) $5,000 for "[p]hysical pain and mental anguish in the past."

2

Metro filed a motion for judgment notwithstanding the verdict on March 5, 2013, arguing that (1) McChristian failed to prove this accident caused his neck injury; (2) the medical evidence presented at trial is legally insufficient to support a verdict for damages; and (3) the trial court erroneously admitted McChristian's medical bills into evidence because the bills did not comply with Texas Civil Practice and Remedies Code section 41.005. McChristian filed a response to Metro's motion for judgment notwithstanding the verdict on March 8, 2013, and the trial court denied Metro's motion on March 11, 2013. On the same day, the trial court signed a judgment in accordance with the jury's verdict.

Metro filed a motion for new trial on March 25, 2013, arguing that (1) the medical evidence presented at trial is legally and factually insufficient to support a verdict for damages; (2) the jury's "award of past medical expenses and past pain and suffering is against the overwhelming weight of the evidence presented during trial;" (3) the trial court erroneously admitted McChristian's medical bills into evidence "without requiring evidence of the amounts actually 'paid or incurred;'" (4) the trial court erroneously excluded evidence of McChristian's felony conviction; and (5) McChristian's trial counsel made an incurably improper jury argument during his closing statement. McChristian filed a response to Metro's motion on April 5, 2013. The trial court signed an order denying Metro's motion for new trial on April 15, 2013. Metro filed its timely notice of appeal on April 26, 2013.

## ANALYSIS

### I.     Sufficiency of the Evidence

Metro argues in its first issue that the trial court erred by entering judgment for McChristian on the jury's verdict because the evidence is legally insufficient to

3

support the jury's verdict for damages.[1]

In reviewing the legal sufficiency of the evidence to support a finding governed by a preponderance of the evidence standard, the court must consider evidence in the light most favorable to the verdict; it must credit favorable evidence if reasonable jurors could do so and disregard contrary evidence unless reasonable jurors could not do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Graves v. Tomlinson*, 329 S.W.3d 128, 140-41 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827.

A legal sufficiency challenge will be sustained only if (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Id*.

A no-evidence challenge asserting that an expert opinion is conclusory can be raised for the first time on appeal. *City of San Antonio v. Pollock*, 284 S.W.3d

---

[1] In its issue heading, Metro also states that the evidence is factually insufficient to support the jury's verdict for damages. However, Metro's argument and authorities address only a legal sufficiency challenge; Metro makes no mention of factual sufficiency. Accordingly, we do not address whether the evidence was factually sufficient to support the jury's verdict for damages. *See* Tex. R. App. P. 38.1(i).

809, 817 (Tex. 2009). An expert opinion is considered conclusory if it is essentially a "conclusion without any explanation." *See Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 & n.32 (Tex. 2008). "To preserve a complaint that scientific evidence is unreliable and thus, no evidence, a party must object to the evidence before trial or when the evidence is offered." *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998). Without requiring a timely objection to the reliability of the scientific evidence, the offering party is not given an opportunity to cure any defect that may exist. *Id*. "[T]o prevent trial or appeal by ambush, . . . a complaining party must object to the reliability of scientific evidence before trial or when the evidence is offered." *Id*. at 409-410.

Thus, while a no-evidence challenge asserting that an expert opinion is conclusory need not be raised at trial, a no-evidence challenge based on methodology or a lack of reliability must be raised before trial or when the evidence is offered. *Pollock*, 284 S.W.3d at 817. "When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *Id*. at 818. "But if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id*.

Metro argues on appeal that the "issue in this case is whether there is more than a scintilla of evidence that supports a causal nexus between the event sued upon—the METRO bus and light rail collision—and . . . McChristian's neck injuries." Metro challenges the reliability of Dr. Reuben's testimony; it argues that Dr. Reuben's unreliable medical testimony was legally insufficient to support a finding that the Metro bus and rail accident was the cause of McChristian's neck

5

injury.

Metro did not challenge the reliability of Dr. Reuben's expert testimony before or during trial. Metro therefore failed to preserve a reliability complaint for review on appeal, and we overrule its issue in that regard. *See id.* at 817; *Maritime Overseas Corp.*, 971 S.W.2d at 409.

To the extent Metro makes a no-evidence challenge asserting that Dr. Reuben's expert opinion is conclusory, we reject such an assertion.

Dr. Reuben testified that he first examined and treated McChristian on April 9, 2012. He testified that McChristian's MRI showed that McChristian had multi-level disc herniations at C3-4 and C7-T1, which usually are painful. Dr. Reuben testified that McChristian stated he had not suffered any prior serious injury to his neck. Based on the medical history provided by McChristian, the examination of McChristian, the results of the MRI test, and his experience and training, Dr. Reuben diagnosed McChristian with discogenic cervical pain — meaning "pain arising from an injury to the discs in the neck;" multi-level cervical disc herniations; and cervical radiculitis — meaning "the nerve roots exiting the cervical spine on the left side were irritated from these disc herniations."

Dr. Reuben opined that, based upon "reasonable medical probability," this type of injury was consistent with what he "as a physician would expect to result from an accident like Mr. McChristian described" to him. Dr. Reuben opined that "to a reasonable degree of medical certainty and based on reasonable medical probability," McChristian's injuries were "caused by the train/bus accident of February 8, 2010."

Metro contends that Dr. Reuben retracted his causation opinion after hearing that McChristian had a history of low back problems dating back to a 2001 car

6

accident, and "was unable to testify that it was more probable than not that the cause of [McChristian]'s neck injury was the bus/light rail accident." Contrary to Metro's assertion, Dr. Reuben never retracted his causation opinion.

During cross-examination, Dr. Reuben testified that he was not aware McChristian had a history of low back pain and had suffered a low back injury in a 2001 car accident. Dr. Reuben also was unaware that McChristian had sought treatment at Ben Taub hospital for low back pain nine days and then three days before the Metro rail and bus accident. However, Dr. Reuben testified that he "was principally asking [McChristian] in terms of prior serious injury to his neck," and "didn't spend a lot of time looking at whether he had a history of back problems because he wasn't complaining of his back at this time." Dr. Reuben also stated that medical history is "one component of what makes up a diagnosis . . . But we have other items that we can look at. And if that's inconsistent with his history, that's something that we would factor into the analysis."

Dr. Reuben testified that he based his causation opinion on McChristian's statements about the February 2010 Metro accident; photographs of the accident; McChristian's lack of a history of neck pain; and McChristian's report that the "neck pain started at the time of the accident and persisted since then." Dr. Reuben rejected a contention that McChristian's asserted failure to "give [Dr. Reuben] a complete medical history" prevented him from determining causation with "any medical certainty." Dr. Reuben also testified that McChristian's "prior complaints to the low back area" would not change his opinion regarding the medical history provided by McChristian "[b]ecause the low back is a separate entity" from the neck.

We conclude that more than a scintilla of evidence supports the jury's finding that McChristian's neck injury was caused by the February 2010 Metro

7

accident; thus, the evidence is legally sufficient to support a judgment based on the jury's verdict. Accordingly, we overrule Metro's first issue.

## II. Medical Bills "Actually Paid or Incurred"

Metro argues in its second issue that the trial court erroneously admitted McChristian's medical bills into evidence over objection without requiring evidence that the bills were "actually paid or incurred." *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (Vernon 2008).

Section 41.0105 states as follows: "In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." *Id.* "[T]his statute limits recovery, and consequently the evidence at trial, to expenses that the [medical] provider has a legal right to be paid." *Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011). The phrase "actually paid or incurred" as used in the statute "means expenses that have been or will be paid, and excludes the difference between such amount and charges the service provider bills but has no right to be paid." *Id*. at 396–97.

A tortfeasor is not liable for medical expenses that the claimant is not required to pay to the provider because allowing such a recovery would bestow a windfall. *Id*. at 397. Section 41.0105 therefore "limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant." *Id*. at 398. Because a claimant is not allowed to recover medical expenses that the provider is not entitled to be paid, evidence of charges for which the provider is not entitled to payment is "irrelevant to the issue of damages" and inadmissible. *Id*.

The supreme court approached this issue as one involving the admissibility

8

of evidence during trial; it rejected a contention that the full amount of billed charges should be admitted into evidence during trial and then ratcheted downward during post-judgment motion practice if a defendant proffers evidence of adjustments or write-offs. *Id.* at 399. "Accordingly, we hold that only evidence of recoverable medical expenses is admissible at trial." *Id.*

*Haygood* does not squarely address the nature of the showing necessary to establish that particular medical expenses are among those that the "provider has a legal right to be paid" — and thus necessary to establish admissibility under section 41.0105. The supreme court observed that "[p]roviders commonly bill insured patients at list rates, with reductions to reimbursement rates shown separately as adjustment or credits." *Id.* at 394. Haygood's medical providers billed a total of $110,069.12. *Id.* at 392. The supreme court's opinion notes that "Haygood's health care providers adjusted their bills with credits of $82,329.69, leaving a total of $27,739.43." *Id.* "At the time of trial, $13,257.41 had been paid, and $14,482.02 was due." *Id.* The opinion also states: "The record indicates that almost all of what has been paid was by insurance." *Id.* at 392 n.7. The supreme court's opinion does not describe the nature of the proof adduced in the trial court to establish these figures.

The intermediate appellate court opinion in *Haygood* states that these figures were uncontested on appeal. *De Escabedo v. Haygood*, 283 S.W.3d 3, 5 (Tex. App.—Tyler 2009), *aff'd*, 356 S.W.3d 390 (Tex. 2011). A quotation in that opinion from a trial court pleading suggests the adjusted amounts were established by a treating physician's testimony and medical billing record affidavits; according to the quoted excerpt, these sources "'readily admit that the bills have been adjusted downward, and the facilities have . . . written off portions of those bills.'" *Id.* at 5.

These circumstances and the opinions in *Haygood* suggest at a minimum that information necessary to establish whether adjustments or write-offs have occurred – and thus necessary to establish admissibility under section 41.0105 – can come from stipulations; the face of medical bills and records themselves; affidavits; testimony; or some combination of these sources.

Here, McChristian offered 15 medical bills into evidence totaling $31,264.99. The trial court admitted these bills into evidence at trial over Metro's objection that McChristian had not satisfied *Haygood* and section 41.0105 because he had not shown that the billed amounts were "actually paid or incurred."[2]

Some of the admitted medical bills show billed amounts and affirmatively indicate on their face that no adjustments or write-offs have been made to the billed amounts; others show only billed amounts with no indication that "list prices" have been reduced or written off pursuant to insurance reimbursement discounts or other reasons. Metro's attorney was asked at oral argument: "To the extent the plaintiff has the burden to demonstrate amounts actually paid [or] actually incurred, does a bill that shows no adjustments satisfy that burden of proof?" Counsel answered, "I believe it does."

Medical records were admitted into evidence from St. Joseph Medical Center, where McChristian was treated following the February 2010 Metro

---

[2] McChristian initially filed affidavits before trial in an effort to establish the reasonableness and necessity of his medical expenses; Metro filed a controverting affidavit disputing the reasonableness and necessity of certain of those expenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (Vernon Supp. 2014); *see also Haygood*, 356 S.W.3d at 399 (Section 18.001 "merely provides for any dispute over reasonable and necessary expenses to be teed up by affidavit, and says nothing about whether unpaid expenses are reasonable and necessary."). The statute governing the form of affidavits proffered to establish the cost and necessity of services was amended in 2013 and states: "If a medical bill or other itemized statement attached to an affidavit . . . reflects a charge that is not recoverable, the reference to that charge is not admissible." *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.002(b-2) (Vernon Supp. 2014). The amended version of section 18.002(b-2) does not apply to McChristian's suit, which was filed in 2010.

10

accident; these records state that McChristian is "uninsured" and identify his financial status as "self pay." Dr. Reuben, who testified at trial via deposition, testified as to the reasonableness and necessity of McChristian's medical charges; except for his own bills, Dr. Reuben disclaimed knowledge about whether "any of the amounts reflected in those bills are legally owed," were written off, or were reduced. McChristian was asked the following question during trial: "All those medical expenses that you've gotten from all these doctors, whose responsibility are those? Are they your responsibility?" McChristian answered, "Well, right now they're mine." A follow up question asked: "Has anything been paid yet?" McChristian answered, "No."

We conclude on this record that the admission of McChristian's medical bills complies with section 41.0105 and its underlying policies. As the supreme court explained, section 41.0105 addresses the difficulty in determining reasonable expenses for necessary medical care when "[h]ealth care providers set charges they maintain are reasonable while agreeing to reimbursement at much lower rates determined by insurers to be reasonable, resulting in great disparities between amounts billed and payments accepted." *Haygood*, 356 S.W.3d at 391.

The difficulty highlighted in *Haygood* does not arise in this case given the uninsured status reflected in McChristian's medical records; bills showing no adjustments, as discussed with Metro's attorney during oral argument; and McChristian's testimony that the bills are his responsibility and remain unpaid. This record offers no basis for a conclusion that the medical expenses at issue here included list price charges for which the service providers billed but had "no right to be paid." *Id.* at 396; *cf. Big Bird Tree Servs. v. Gallegos*, 365 S.W.3d 173, 176 (Tex. App.—Dallas 2012, pet. ref'd) ("Unlike *Haygood*, there was no evidence of any contract that would have prohibited Parkland or Southwestern from charging

11

Gallegos for the full value of the services rendered. Thus, we cannot conclude the hospital was not 'entitled' to recover for the actual value of the services rendered.") Accordingly, we overrule Metro's second issue.

## III. Improper Jury Argument

Metro contends in its third issue that the trial court erroneously denied its motion for new trial because McChristian's trial counsel made a reference to "snake oil" in closing. Metro argues that referring to its counsel as a "snake oil" salesman is tantamount to saying Metro's "counsel is a fraud and cannot be trusted or believed." Metro did not object to McChristian's closing argument but did file a motion for new trial arguing that McChristian's jury argument was incurable.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

To obtain a reversal of a judgment on the basis of improper jury argument, a party must establish (1) an error, (2) that was not invited or provoked, (3) that was preserved at trial by a proper objection, motion to instruct, or motion for mistrial, and (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial court. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979); *see also Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) ("Appellate complaints of improper jury argument must ordinarily be preserved by timely objection and request for an instruction that the jury disregard the improper remark."). Typically, retraction of the argument or an instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d

678, 680 (Tex. 2008) (per curiam).

"The injection of new and inflammatory matters into a case through argument has in exceptional instances been regarded as incurable by an instruction." *Reese*, 584 S.W.2d at 840. Incurable argument encompasses appeals to racial prejudice; unsupported charges of perjury; unsupported, extreme, and personal attacks on opposing parties and witnesses; or baseless accusations of witness tampering. *Penalver*, 256 S.W.3d at 681.

A complaint of incurable argument may be asserted and preserved in a motion for new trial, even without a complaint and ruling during the trial. *Phillips*, 288 S.W.3d at 883 (citing Tex. R. Civ. P. 324(b)(5)). "The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a 'juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument.'" *Id*. (quoting *Goforth v. Alvey*, 153 Tex. 449, 271 S.W.2d 404, 404 (1954)). Incurable argument is "that which strikes at the very core of the judicial process." *Id*. To prevail on a claim that improper argument was incurable, the complaining party generally must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects. *Penalver*, 256 S.W.3d at 680-81.

Metro argues on appeal that a new trial is warranted because McChristian's trial counsel made a reference to Metro's counsel and asked: "What kind of snake oil is he selling you?"

Metro's counsel assailed McChristain's credibility during closing. Metro's counsel argued that, contrary to McChristian's testimony that he had moved in his seat at the time of the Metro bus and rail accident, a video of the accident played

13

for the jury during trial showed that McChristian never moved or "le[ft] his seat" after the collision. In rebuttal, McChristian's counsel contended that the video did not support an assertion that McChristian never moved after the collision. McChristian's counsel made the following argument:

> He [Metro's counsel] wants to tell you that you're looking at the video -- those videos -- first of all, nobody even testified that they were in -- that video of the accident is about a second and half ahead of the other video. So when he pauses it when you see the bus hit the train, he hasn't even moved yet.
>
> He asked Mr. McChristian: You haven't moved yet?
>
> Mr. McChristian didn't even know what he was talking about. What do you mean I haven't moved? He's trying to get you to say, well, look, right when the train and the bus hit, nobody moves.
>
> Well, you got to wait a second and then you see everybody kind of do this in the front of the bus. They all bounce over. Not everybody at the same time decided to move over in their seat. Does he really want you to believe that? What kind of snake oil is he selling you? Is this a win at all cost? Is that what we want?

To the extent the reference to snake oil was objectionable and improper, the nature of this remark was not so inflammatory and incurably harmful as to "strike[] at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts." *Cf. Penalver*, 256 S.W.3d at 681 (holding that jury argument comparing actions of nursing home to Nazis, who experimented on and purposefully killed humans, was incurable).

We cannot conclude that this argument is one of the rare instances of improper argument that an instruction from the court or retraction of the argument could not have removed its effects or prevented the members of the jury from following their oaths with proper instructions from the trial court. *See id*. at 680–81. We conclude that McChristian's jury argument was not "so extreme that a 'juror of ordinary intelligence could have been persuaded by that argument to

14

agree to a verdict contrary to that to which he would have agreed but for such argument.'" *Phillips*, 288 S.W.3d at 883. We conclude that the trial court did not abuse its discretion in denying Metro's motion for new trial with regard to its improper jury argument. Accordingly, we overrule Metro's third issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/     William J. Boyce
        Justice



Panel consists of Justices Boyce, Jamison and Donovan.