**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed December 10, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00344-CV

---

### IN RE KRISTEN S. MUNSCH, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 18-CV-1214**

---

## D I S S E N T I N G   O P I N I O N

The trial court abused its discretion by granting a new trial and the relator lacks an adequate remedy by appeal. So, this court should conditionally grant the petition for writ of mandamus and direct the trial court to vacate its new-trial order.

ANALYSIS

When granting a motion for new trial, the trial court must provide an understandable, reasonably specific explanation of the trial court's reasons for setting aside the jury's verdict.[1]  The trial court's stated reasons for granting a new trial must be legally valid, and they must be specific enough to show that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand.[2]  Even if the new-trial order meets these procedural requirements, it "cannot stand" if the underlying record does not support the trial court's articulated reasons.[3]  Thus, appellate courts may conduct a merits-based review of new-trial orders.[4]

Relator Kristen A. Munsch does not challenge the new-trial order on facial-invalidity grounds; she challenges only the merits of the new-trial order.  The record does not support the trial court's stated reasons for granting a new trial.

### Whether the Jury's Failure to Find Negligence Goes Against the Great Weight and Preponderance of the Evidence

Munsch argues that the trial court abused its discretion in concluding that the evidence is factually insufficient to support the jury's answer of "no" to the question, "Did the negligence, if any, of Kristin S. Munsch proximately cause the occurrence in question?"  By its answer, the jury did not find that Munsch was not negligent or

---

[1] *In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding); *In re Columbia Med. Ctr., of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009) (orig. proceeding).

[2] *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding).

[3] *In re Toyota Motor Sales, Inc.*, 407 S.W.3d 746, 758 (Tex. 2013).

[4] *Id.*

that her negligence did not proximately cause the collision; instead, the jury found that real party in interest Joseph D. Devore did not prove by a preponderance of the evidence that Munsch's negligence, if any, proximately caused the occurrence (the "Jury Finding").[5] So, the trial court erred when it stated in the new-trial order that the jury found "[Munsch] did not fail to take reasonable care to avoid causing injury or loss to another person and that [Devore] has not suffered injury or loss which a reasonable person in the circumstances could have expected to foresee (damage) that the damage was caused by the breach of duty (causation)."[6]

To determine whether the evidence is factually sufficient to support the Jury Finding, we are to "apply the well-established standard for assessing challenges to the factual sufficiency of the evidence, without any deference to the trial court's ruling."[7] That means we must consider and weigh all the evidence, both supporting and contradicting the finding.[8] When a party attacks the factual sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party must demonstrate that the adverse finding goes against the great weight and preponderance of the evidence.[9] In conducting this assessment, we are to consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust.[10]

---

[5] *See Tousant v. Buchanan*, No. 14-18-00574-CV, 2020 WL 6326176, at *2 (Tex. App.—Houston [14th Dist.] Oct. 29, 2020, no pet. h.) (mem. op.).

[6] *See id*.

[7] *In re Cambell*, 577 S.W.3d 293, 301 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding).

[8] *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).

[9] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

[10] *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The fact finder stands as the sole judge of the credibility of the witnesses and the weight given their testimony.[11] Neither the trial court nor this court may substitute its own judgment for that of the jury, even if the court would reach a different answer on the evidence.[12] The amount of evidence necessary to show that factually sufficient evidence supports a jury finding is far less than the amount of evidence necessary to justify a conclusion that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[13]

Devore bases his negligence claim on the premise that Munsch did not leave enough space between her vehicle and Devore's vehicle and, if Munsch had done so, the two vehicles would not have collided. Munsch testified that traffic abruptly slowed when "[e]veryone slammed on their brakes," but the traffic had not come to a complete stop. Munsch saw the brake lights on Devore's vehicle come on, but she was unable to stop. Explaining that she could not move into either the right or left lanes to avoid hitting Devore's vehicle, Munsch stated:

> So whenever I was driving, there was an 18-wheeler to the side on the right-hand lane; and I was a little bit further behind. We were kind of like this.
>
> I saw everybody start hitting their brakes, so I looked to my right to see if I could merge to the right-hand lane, instead of slamming on my brakes; and I couldn't because there was a vehicle there coming up behind the 18-wheeler.

---

[11] *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

[12] *Cambell*, 577 S.W.3d at 301–02.

[13] *Id.* at 302.

4

So whenever I looked back, everybody was slamming on their brakes harder and I didn't have enough time to hit my brakes in a manner that I wouldn't hit him and I couldn't go to the left because of the ramp.

. . .

I wasn't just going the same speed. I did slow down, but I was trying to see if I could get into the other lane to avoid hitting him.

I couldn't. I didn't have enough time to hit my brakes harder without hitting—bumping into him.

Munsch believed that she was keeping a safe distance behind Devore's vehicle and did not agree that, had there been more space between her vehicle and Devore's vehicle, she would not have hit Devore's vehicle. Even so, Munsch stated that she could have been farther behind Devore, which would have provided more time for her to react. Although Munsch testified that traffic had slowed abruptly, the crash report does not mention an abrupt slowing of traffic. Munsch stated that Devore did not do anything to cause the accident. Munsch was going the same speed as the rest of traffic. "No drugs or alcohol [were] involved." Munsch was not using her phone, and she was not otherwise distracted. There were no mechanical issues with Munsch's vehicle. Munsch testified that she may have caused the accident, but she denied that she was negligent.

When questioned by his own counsel on what occurred just before Munsch hit his vehicle, Devore testified that another car had moved into his lane ahead of him:

I seen the white car do it, though, to be honest. It was a white car in the far right lane. It jumped over in front of the cars in our lane, and it made every car in front of us brake lock up [sic].

5

Devore further explained that the "white car" "switched lanes, and that's what caused our lane to slow down." Devore similarly reported this event to his chiropractor: "Bumper-to-bumper traffic that was moving when a slower car from another lane jumped into [Devore's] lane." And, on cross-examination about the "white car," Devore testified that the "white car's" switching lanes caused a "chain reaction":

> Q. So this white car, did it stick around and provide any information and say—
>
> A. No, it was maybe like five cars up. Like what she was talking about, the truck or whatnot on this side, it was an open space in front of the truck.
>
> And I imagine about four car lengths, four or five car lengths up, that's when the white car jumped over into our lane and slowed all of the cars up.
>
> Q. That's when the white car, I guess—
>
> A. Yes.
>
> Q. —caused a chain reaction?
>
> A. Yes.
>
> Q. Slammed on its brakes?
>
> A. Yes.
>
> . . .
>
> Q. Had the white car not caused the chain reaction, this accident never would have occurred, right?
>
> A. Probably not.

6

. . .

 Q. But you understand that you just testified that the white car caused the reaction that caused the action.

 A. It slowed all the other cars down.

The mere occurrence of a rear-end automobile collision does not by itself amount to evidence of negligence on the part of the rear driver.[14] Likewise, a defendant's testimony that she rear-ended the plaintiff's vehicle is not an admission of negligence.[15] The plaintiff must prove both specific acts of negligence by the defendant and proximate cause.[16]

The trial court cited the following evidence in support of its determination that the Jury Finding went against the great weight and preponderance of the evidence: Munsch admitted that (1) she caused the accident; (2) weather, mechanical issues, and health issues had no role in the accident; (3) she knew the importance of keeping a safe following distance and increasing that distance the faster one travels; (4) Devore did not do anything to cause the accident; (5) the accident would not have happened if Munsch had kept a greater distance between herself and Devore; and (6) it is foreseeable that accidents occur if one does not maintain the appropriate distance between vehicles. This evidence tells only half the story.

---

[14] *See Alexander v. Halliburton Energy Servs., Inc.*, No. 14-17-00485-CV, 2018 WL 3385117, at *4 (Tex. App.—Houston [14th Dist.] Jul. 12, 2018, no pet.) (mem. op.); *In re Ybarra*, No. 04-17-00245-CV, 2017 WL 4655347, at *4 (Tex. App.—San Antonio, Oct. 18, 2017, orig. proceeding [mand. denied]) (mem. op.); *Benavente v. Granger*, 312 S.W.3d 745, 749 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

[15] *See Ybarra*, 2017 WL 4655347, at *4.

[16] *See Alexander*, 2018 WL 3385117, at *4; *Benavente*, 312 S.W.3d at 749.

The law demands that the trial court consider all the evidence, yet the trial court took account of only evidence that supports its factual-insufficiency determination, without considering evidence that supports the Jury Finding. Evidence supporting the Jury Finding includes Munsch's testimony that "[e]veryone slammed on their brakes," she believed she was following Devore at a safe distance, and she was not negligent. Munsch slowed down and tried to move to another lane to avoid hitting Devore's vehicle. Devore's testimony that this accident would not have happened had the "white car" not switched lanes, causing the vehicles in front of him to brake and triggering a "chain reaction" also supports the Jury Finding.

If the trial court had considered and weighed all the trial evidence, the trial court could have reached only one conclusion: the evidence supporting the Jury Finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[17] Thus, the trial evidence stands factually sufficient to support the Jury Finding. The record does not support the trial court's granting of a new trial based on factual insufficiency of the evidence to support the Jury Finding.[18] The trial court abused its discretion by granting a new trial on this ground.[19]

### *Whether Defense Counsel Engaged in Incurable Jury Argument*

In his motion for new trial, Devore also asserted that the trial court should grant a new trial because Munsch's counsel engaged in incurable jury argument. Devore claimed that Munsch's counsel "on multiple occasions violated the [trial

---

[17] *See Tousant*, 2020 WL 6326176, at *2–4; *Alexander*, 2018 WL 3385117, at *4–6.

[18] *See Tousant*, 2020 WL 6326176, at *2–4; *Alexander*, 2018 WL 3385117, at *4–6.

[19] *See Cambell*, 577 S.W.3d at 301–02.

court's] rulings on motions in limine and made extremely prejudicial and inflammatory statements to the jury not based on evidence in the case, including but not limited to, accusing [Devore] of driving with a suspended license at the time of the crash."[20]  In the challenged order, the trial court granted a new trial on the ground that Munsch's counsel "on multiple occasions violated the [trial court's] rulings on motions in limine and made extremely prejudicial and inflammatory statements to the jury not based on evidence in the case, including but not limited to, accusing [Devore] of driving with a suspended license at the time of the crash." Devore asserted both that he preserved error as to the allegedly improper jury argument and that this alleged jury argument was incurable.

In its new-trial order, the trial court granted a new trial based on its finding that Munsch's counsel engaged in improper jury argument by "accusing [Devore] of driving with a suspended license at the time of the crash."  The only part of the record that arguably supports this finding is the following exchange during Munsch's counsel's cross-examination of Devore:

> Q.  I noticed your friend here drove you here; is that correct?
> A.  Yes, sir.
> Q.  Will you tell the jury when your license was suspended?

Devore's counsel then objected, leading to the following exchange between the trial court and Devore's counsel:

> [Devore's counsel]:  Objection; Your Honor.  This is irrelevant. It's prejudicial.
> [trial court]:  Sustained.

---

[20] (underlining in original omitted).

[Devore's counsel]:  It has nothing to do with the facts —

[trial court]: Jury is going to disregard the last line of questioning.

Move on, [Munsch's counsel].

[Devore's counsel]:  I'd just ask the Court to instruct the jury to disregard it.

[trial court]:  I just did.

 [Devore's counsel]:  Oh, I'm sorry.

And ask the Court for a mistrial.

[Munsch's counsel]:   I have no further questions, Your Honor.

[Devore's counsel]:  Your Honor, I have no further questions.

. . .

[trial court]: [Devore's counsel], on the record, are you asking for a mistrial?

[Devore's counsel]:  I'm afraid if I do and you grant it, my client may not be happy with me.

[trial court]: I want to make sure —

[Devore's counsel]:  I did ask on the record for a mistrial.

[trial court]: You're asking for a minute to confer with your client?

[Devore's counsel]:  To confer with my client.

[trial court]: That's fine.

. . .

[Devore's counsel]:  Thank you for the time, Your Honor.

While we believe that it would be appropriate at this time for the Court to grant one, we think in the interest of justice and judicial resources and this jury and the Court's time, we'd ask that the Court not grant a mistrial at this time.

[trial court]: Do you have any other requests that you do want to make?

10

[Devore's counsel]: I do, but it's not — I'd ask the Court to hold its ruling on a mistrial until after we get the verdict.

I don't want to make a request for sanctions at this time. It's just not in my nature at this time.

. . .

[trial court]: No. If he had asked for a mistrial, I would have granted it. If he would have asked for sanctions, I would have granted it.

The trial court told the jury to "disregard the last line of questioning" concerning the suspended license. Devore's counsel asked for a mistrial, but before the trial court ruled, he consulted with Devore, and out of the presence of the jury, asked the trial court not to grant a mistrial. The trial court stated that, if Devore had asked the court to grant a mistrial, the trial court would have done it.

1. *The trial court erred in concluding that a question to a witness was jury argument.*

In its new-trial order, the trial court concluded that Munsch's counsel "on multiple occasions" violated the trial court's rulings on motions in limine and that Munsch's counsel made "extremely prejudicial and inflammatory statements" to the jury not based on evidence in the case. The record does not show any occasions during trial when Munsch's counsel violated a ruling on a motion in limine, including when counsel posed the license-suspension question. Asking a witness a question during cross-examination as to when his license was suspended does not constitute jury argument or a statement to the jury. In posing this question, Munsch's counsel asked a witness on the stand when his license was suspended; counsel did not make an argument or a statement "not based on evidence in the case," as the trial court found.

11

The trial court found that Munsch's counsel "accus[ed] [Devore] of driving with a suspended license at the time of the crash." The record does not show that Munsch's counsel ever accused Devore of driving with a suspended license at the time of the accident. Instead, the record shows only that counsel asked Devore when his license was suspended.

For these reasons alone, the record does not support the trial court's granting a new trial on the ground that the license-suspension question constituted improper jury argument or an improper accusation.[21]

> 2. *To the extent the trial court concluded that the purported jury argument was curable, the trial court erred in granting a new trial on this ground because Devore did not timely object.*

In granting a new trial based on Munsch's counsel's allegedly improper jury argument, the trial court did not state whether it concluded that the alleged jury argument was curable or incurable.[22] To preserve error as to improper jury argument that is curable, the objecting party must make a timely complaint and secure an adverse ruling on it.[23] Retraction of an improper argument or an instruction to disregard from the trial court ordinarily cures any probable harm.[24] Only in rare instances can the probable harm or prejudice not be cured.[25] "A complaint of

---

[21] *In re Toyota Motor Sales, Inc.*, 407 S.W.3d at 758, 762.

[22] In this section, it is presumed for the sake of argument that the question Munsch's counsel asked Devore amounted to jury argument.

[23] *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008) (per curiam); *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 836, 839–41 (Tex. 1979).

[24] *Id*

[25] *Id.*

incurable argument may be asserted and preserved in a motion for new trial, even without a complaint and ruling during the trial."[26]  Only in exceptional cases do courts regard injecting new and inflammatory matters into a case through argument as incurable by instruction.[27]  "Incurable argument includes appeals to racial prejudice; unsupported charges of perjury; unsupported, extreme, and personal attacks on opposing parties and witnesses; or baseless accusations of witness tampering."[28]  The party claiming incurable argument must show that, "based on the record as a whole, the offensive argument was so extreme that a 'juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument.'"[29] Error does not have to be preserved as to incurable jury argument at the time counsel makes the jury argument.[30]

To the extent the trial court concluded that the purported argument was curable, Devore failed to preserve error on this ground because he did not get a timely adverse ruling on his objection.[31]  In addition, if the trial court concluded that the purported argument was curable, the trial court's prompt instruction to the jury to disregard cured any probable harm to Devore from the alleged argument.[32]  For

---

[26] *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009).

[27] *Metro. Transit Auth. v. McChristian*, 449 S.W.3d 846, 855 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

[28] *Id*.

[29] *Phillips*, 288 S.W.3d at 883 (quoting *Goforth v. Alvey*, 271 S.W.2d 404, 404 (Tex. 1954)).

[30] *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680–81.

[31] *Id*.; *Reese*, 584 S.W.2d at 836, 839–41.

[32] *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680.

13

these reasons, to the extent the purported jury argument was curable, the trial court abused its discretion in granting a new trial based on this alleged argument.[33]

3. *To the extent the trial court concluded that the purported jury argument was incurable, the trial court erred in granting a new trial on this ground because the alleged argument was not incurable.*

Devore argues in this original proceeding that Munsch's counsel's allegedly improper jury argument created the impression that his license was suspended at the time of the accident and was suspended for "any potential number of reasons," including as a result of driving while intoxicated or any other major driving violation.[34] Devore also asserts that the question created the false impression that Devore had lied that his loss of wages was due to pain and discomfort from the collision rather than the suspension of his license.

Defense counsel's license-suspension question to Devore is not incurable. As Devore points out, the trial evidence included the Texas Peace Officer's Crash Report showing that Devore was licensed at the time of the accident. Moreover, the jury heard evidence that Munsch caused the accident and that the "white car" caused the accident. Whether Devore's license was suspended at the time of the accident had no bearing on the issue of whether Munsch or the driver of the "white car" caused the accident. As to Devore's complaint that the question created a false impression that Devore had lied that his loss of wages was due to pain and discomfort from the collision rather than the suspension of his license, the jury did not reach the

---

[33] *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680; *Reese*, 584 S.W.2d at 836, 839–41.

[34] In this section, it is presumed for the sake of argument that the question Munsch's counsel asked Devore amounted to jury argument.

14

issue of any type of damages because the jury failed to find that Munsch was negligent. In addition, Munsch's counsel simply asked when Devore's license was suspended. Munsch's counsel did not assert that Devore had his license suspended in the period following the accident for which Devore sought lost wages. At the new-trial hearing, Devore's counsel conceded that Devore's license was suspended for a short time after the accident and after the period for which Devore was seeking damages for lost-earning capacity. The trial court instructed the jury to disregard the question, and if Devore was concerned that the unanswered question would cause him prejudice, his counsel could have asked him on redirect examination when his license was suspended, and the jury would have learned from Devore that the suspension occurred after the accident and not at a time relevant to the issues at trial.

Though Munsch's counsel's question may have suggested that Devore's license was suspended at some time, Munsch's counsel did not state that Devore's license had been suspended, nor did counsel say when any such suspension occurred. By eliciting testimony from Devore that a friend had given him a ride to the courthouse that day, if anything, Munsch's counsel suggested that Devore might have a suspended license at the time of trial, which was eighteen months after the accident.

The majority concludes that based on the question posed to Devore of when his license was suspended, the jury reasonably could have concluded that (1) Devore should not have been driving eighteen months earlier on the date of the accident, or (2) Devore was an incompetent driver. The trial court did not submit any question to the jury as to whether Devore was negligent. No evidence at trial showed that that Devore acted negligently, that Devore was an incompetent driver, or that Devore

15

should not have been driving at the time of the accident. In this context, it would not have been reasonable for a juror to have concluded that any of these propositions were true based on Munsch's counsel asking Devore when his license was suspended. Nor would it have been reasonable to conclude that because counsel posed this question to Devore, the proof at trial did not show by a preponderance of evidence that Munsch's negligence proximately caused the occurrence in question.

Considering the record as a whole, the unanswered question posed to Devore cannot fairly be deemed so extreme as to be incapable of being cured by an instruction to disregard.[35] This court is supposed to presume that in deliberating the jury followed the trial court's instruction to disregard the license-suspension question.[36] Because that instruction cured any harm the question might have posed, the record does not support the trial court's granting a new trial based on the license-suspension question.[37]

---

[35] *See Phillips*, 288 S.W.3d at 882–83 (holding argument that juries in the area had been very liberal with defendants who were doctors and that their verdicts did not send a message was not incurable jury argument); *Reese*, 584 S.W.2d at 836, 839–41 (holding jury argument suggesting there was a sham or plot between plaintiff's attorney and his doctor to inflate his medical expenses was not incurable jury argument); *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 332–33 (Tex. 1968) (holding jury argument by plaintiffs' lawyer suggesting that plaintiff's cancer was caused by the occurrence made the basis of the suit, when no evidence supported this proposition, was not incurable jury argument); *Haryanto v. Saeed*, 860 S.W.2d 913, 920–21 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (en banc) (holding jury argument that was outside of the record and that improperly cast the defendant as a fugitive from justice was not incurable jury argument).

[36] *See Twin City Fire Ins. Co. v. Gibson*, 488 S.W.2d 565, 577 (Tex. App.—Amarillo 1972, writ ref'd n.r.e.) (stating that presumption was that instruction to disregard argument was followed jury in its deliberations).

[37] *See In re Toyota Motor Sales, Inc.*, 407 S.W.3d at 759–62; *Cambell*, 577 S.W.3d at 301–02.

4. *To the extent the trial court granted a new trial based on alleged violations of motion-in-limine rulings or other alleged improper jury argument, the record does not support the ruling.*

As noted, in one part of its alternate basis for granting a new trial, the trial court found that Munsch's counsel "on multiple occasions violated the [trial court's] rulings on motions in limine." In fact, the record does not show any occasions during trial when Munsch's counsel violated a ruling on a motion in limine, including when counsel posed the license-suspension question, and Devore does not argue otherwise. So, the record does not support the trial court's granting of a new trial based on alleged multiple violations of a ruling on a motion in limine.[38]

In the other part of its alternate basis for granting a new trial, the trial court found that Munsch's counsel "made extremely prejudicial and inflammatory statements to the jury not based on evidence in the case." The trial court did not specify in its new-trial order any alleged prejudicial and inflammatory jury argument other than the license-suspension question. Though the trial court found that Munsch's counsel made more than one alleged prejudicial and inflammatory jury-argument statement to the jury, the record does not reflect that Munsch's counsel made any such statements. Devore does not assert that Munsch's counsel made any such statements other than the license-suspension question. So, the record does not support the trial court's granting of a new trial based on alleged multiple prejudicial and inflammatory statements to the jury.[39]

---

[38] *See In re Toyota Motor Sales, Inc.*, 407 S.W.3d at 759–62; *Cambell*, 577 S.W.3d at 301–02.

[39] *See In re Toyota Motor Sales, Inc.*, 407 S.W.3d at 759–62; *Cambell*, 577 S.W.3d at 301–02.

To the extent the trial court granted a new trial based on alleged violations of motion-in-limine rulings or based on alleged improper jury argument by Munsch's counsel other than the license-suspension question, the record does not support granting a new trial on that basis, and the trial court abused its discretion in doing so.[40]

## CONCLUSION

Because the trial court abused its discretion in granting a new trial on each of the grounds stated in the new-trial order and because Munsch lacks an adequate remedy by appeal, this court should conditionally grant Munsch's petition for writ of mandamus and direct the trial court to vacate its January 31, 2020 order granting Devore's motion for new trial. Because this court instead denies mandamus relief, I respectfully dissent.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Poissant (Zimmerer, J., majority).

---

[40] *See In re Toyota Motor Sales, Inc.*, 407 S.W.3d at 759–62; *Cambell*, 577 S.W.3d at 301–02.

18